**In re Janis Y. BECKFORD, Debtor.**

**Julian Beckford, Plaintiff,**

v.

**Janis Y. Beckford, Defendant.**

**Bankruptcy No. LA99–30456TD.
Adversary No. AD99–02611TD.**

United States Bankruptcy Court,
C.D. California.

Sept. 27, 2000.

8

Robert W. Northup, Jr., Lightfoot & Northup, Pasadena, CA.

Charles Shamash, Law Offices of Charles Shamash, Beverly Hills, CA.

## MEMORANDUM OF DECISION AFTER TRIAL

THOMAS B. DONOVAN, Bankruptcy Judge.

### INTRODUCTION

This suit was brought by a former husband against his ex-wife to determine the nondischargeability of a community property equalization debt created by the family court. After trial of this adversary proceeding, I considered the evidence and the argument of counsel and announced orally my partial findings of fact and conclusions of law. This memorandum will set forth in greater detail my findings of fact and conclusions of law.

### FACTS

Dr. and Mrs. Beckford were married on September 1, 1973. They had two children. On June 2, 1989, the marriage was dissolved by judgment of the Los Angeles Superior Court. On March 4, 1991, the superior court issued a further judgment that, in general, awarded Mrs. Beckford the family residence, household furniture, and a 1988 automobile; it awarded Dr. Beckford a 1984 automobile and his medical practice. To equalize the division of community property, the 1991 judgment ordered Mrs. Beckford to execute a promissory note and deed of trust in favor of Dr. Beckford on the family residence in the amount of $22,975, with interest at 8% per year. The judgment provided that all principal and interest would be payable on October 22, 2000, or upon the sale of the family residence, whichever occurred first.

In April 1999, Mrs. Beckford lost the family residence to foreclosure. On May 28, 1999, Mrs. Beckford filed a voluntary chapter 7 bankruptcy petition. Dr. Beckford timely sued to establish the nondischargeability of Mrs. Beckford's obligation on the note. Coincidentally, Dr. Beckford filed a chapter 13 petition on June 30, 1998. His chapter 13 plan was confirmed by the court later in 1998.

Dr. Beckford is a physician and is employed by a Beverly Hills medical group. He is about 50 years old. On January 12, 1999, Dr. Beckford suffered a stroke. Although, to date, Dr. Beckford has suffered no loss of his $117,000 annual gross income and has remained current on his chapter 13 plan payments, his work schedule has been reduced by 20% because of continuing health problems resulting from his stroke. As a result, he now expects his salary to be reduced this year to $93,600. Dr. Beckford's 1984 car now has 300,000 miles on the odometer, is in serious need of repairs, and very well may become inoperable at any time. While his commute requires him to drive 80 miles per day, he has no other means of transportation to and from his place of employment. In addition, Dr. Beckford and his elderly parents co-own a house they live in together. Dr. Beckford's parents are people of very limited means. The home is over-encumbered, and Dr. Beckford pays for most of the expenses of owning and maintaining the home and feeding his family. Dr. Beckford also makes a monthly state court-ordered child support payment of $1,479 for the couple's younger child, their

daughter who will turn 18 in October 2000, and a chapter 13 monthly plan payment of $865 that continues through February 2003.

Mrs. Beckford is an elementary school teacher in the Los Angeles Unified School District. During 1999, Mrs. Beckford's earnings as a teacher were $57,806. Mrs. Beckford's monthly net income, after payroll deductions, was $3,600 per month. Her monthly expenses total about $2,800, including apartment rent of $1,300 and $450 payments on her 1993 car. If I employ the chapter 13 standard to determine Mrs. Beckford's disposable income after expenses, Mrs. Beckford has disposable income of about $800 per month.

In contrast to Dr. Beckford, Mrs. Beckford's record as a debtor in this court has not been as good. In 1997, Mrs. Beckford's first bankruptcy, a chapter 13, was dismissed because she failed to file the required schedules. In 1998, her second chapter 13 bankruptcy was dismissed with a 180–day bar against refiling because she failed to file the required schedules. In connection with her current chapter 7

bankruptcy, Mrs. Beckford provided unreliable information in her schedules and in her statement of financial affairs. Mrs. Beckford also acknowledged during trial that she had not reviewed her bankruptcy schedules for accuracy before signing them under oath. As a result, (1) her Schedule B neglected to disclose her pension rights, support payments she receives from Dr. Beckford, and a Palm Springs timeshare she owns; (2) on Schedule I, Mrs. Beckford understated her annual income by $7,000; and (3) Schedule J grossly overstated Mrs. Beckford's alleged monthly expenses.

## DISCUSSION

■ The nondischargeability of Mrs. Beckford's obligation to Dr. Beckford must be determined pursuant to 11 U.S.C. § 523(a)(15).[1] Section 523(a)(15) begins with a reference to § 523(a)(5)[2]. Under § 523(a)(5), a debt is nondischargeable if it is owed "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

   Section 523(a)(15) states in pertinent part:
   A discharge . . . does not discharge an individual debtor from any debt—

   . . .

   (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
   (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
   (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

2. Section 523(a)(5) states in pertinent part:

   A discharge . . . does not discharge an individual debtor from any debt—

   . . .

   (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
   (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
   (B) such debt includes a liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance, or support.

agreement, divorce decree or other order of a court of record." In the present case, the debt Mrs. Beckford owes to her former husband arose from the superior court decree. However, the debt cannot be characterized as an alimony, maintenance, or support payment due to Dr. Beckford. Rather, the debt was created to equalize the division of the parties' community property. Since this debt is not of a kind described in § 523(a)(5), the dischargeability of this debt must be determined by applying § 523(a)(15).

### 1. Dr. Beckford has established a cause of action under § 523(a)(15)

In order to establish a prima facie case under § 523(a)(15), the plaintiff first must demonstrate the following facts: (1) that the debt arose out of a divorce or separation or that the debt was incurred in connection with the divorce or separation and was imposed by the court of record in the divorce proceeding; and (2) that the debt is not of the kind described in § 523(a)(5), that is, that it is not an obligation to make alimony, maintenance or support payments to a spouse, former spouse, or child of the debtor. Section 523(a)(15) does not expressly allocate the burden of proof between a plaintiff and a defendant. However, in *In re Jodoin*, 209 B.R. 132, 141 (9th Cir. BAP 1997), the Ninth Circuit Bankruptcy Appellate Panel determined that once the plaintiff establishes a prima facie basis for a claim under the statute, the burden lies with the debtor to prove by a preponderance of the evidence that the debt should be discharged.

Section 523(a)(15) provides for two exceptions to the nondischargeability of a 523(a)(15) debt. The first exception applies if the debtor is unable to pay the debt from any of the debtor's income or property "not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor."[3]

The second exception applies when "discharging [the] debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor."[4] These exceptions are referred to as the "Ability to Pay" exception and the "Detriment" exception, respectively.[5]

Dr. Beckford has established a prima facie basis for his claim under § 523(a)(15). By the terms of the superior court decree, the debt was created to equalize the distribution of community property in connection with the parties' divorce, not to provide alimony, maintenance, or support for Dr. Beckford's benefit. Accordingly, Mrs. Beckford, the debtor in this action, bears the burden of proof to establish the dischargeability of the debt.

### 2. Mrs. Beckford has not proven, pursuant to § 523(a)(15)(A), that she is unable to pay the debt

In the course of her bankruptcy, and under oath, Mrs. Beckford signed and filed Schedule I, Schedule J, and an amended Schedule J. These schedules contain: (1) inaccurate income statements; (2) serious arithmetic errors; and (3) grossly overstated claims regarding Mrs. Beckford's expenses.

Mrs. Beckford's Schedule I listed her gross monthly income for 1999 as $3,800, which would yield an annual income of $45,600. However, Mrs. Beckford's 1999 W–2 from the school district and her 1999 federal tax return reveal that her income in 1999 actually was $57,807. Thus, Mrs. Beckford understated her monthly income by more than $1,000.

On her original Schedule J, Mrs. Beckford listed a monthly charitable contribution of $2,000. Her amended Schedule J changed this figure to $200. However, the total expense figure reflected on amended Schedule J failed to reflect the $1,800 reduction. Mrs. Beckford's credibility was compromised further when she admitted at trial that in fact during her bankruptcy case and before, she had not made any

---

**3.** § 523(a)(15)(A).

**4.** § 523(a)(15)(B).

**5.** *Jodoin*, 209 B.R. at 139, nn. 17–18.

charitable contributions, although she said she hoped to do so sometime in the future.

As a result of Mrs. Beckford's lack of credibility in these respects, and because of her demeanor as a trial witness, I am unable to accept her statements and testimony regarding her current income and prospects and her alleged monthly expenses. Because of my concern with the lack of reliability of Mrs. Beckford's figures, I have tried to assess from the evidence what I believe to be a reasonable approximation of Mrs. Beckford's monthly income and expenses, as § 523(a)(15)(A) requires me to do.

I also have compared Mrs. Beckford's expenses to Dr. Beckford's in order to decide properly the question of nondischargeability of Dr. Beckford's claim against Mrs. Beckford. In addition, because a § 523(a)(15) analysis requires me to determine Mrs. Beckford's disposable income, in order to do so I have employed the disposable income test as articulated for chapter 13 debtors in § 1325(b)(2).[6] I have recalculated Mrs. Beckford's monthly expenses and juxtaposed Dr. Beckford's similar expenses, as follows:

| | Mrs. Beckford's Amended Schedule J | My Recalculation of Mrs. Beckford's Expenses | Dr. Beckford's Comparative Expenses (a partial list from Schedule J) |
|---|---|---|---|
| Rent | $1,300 | $1,300 | $3,906 House payment |
| Electric | 75 | 75 | 0 |
| Water | 30 | 30 | 0 |
| Phone | 150 | 60 | 60 |
| Storage | 200 | 0 | 0 |
| Home maintenance | 200 | 0 | 0 |
| Food | 400 | 200 | 350 |
| Clothing | 150 | 150 | 35 |
| Dry cleaning/ laundry | 25 | 25 | 20 |
| Medical/dental | 100 | 50 | 0 |
| Transportation | 400 | 150 | 185 |
| Recreation | 200 | 50 | 5 |
| Charitable contribution | 200 | 0 | 0 |
| Auto insurance | 150 | 150 | 120 |
| Car payment | 450 | 450 | 0 |
| Timeshare | 112 | 112 | 0 |
| Allowance to daughter | 500 | 0 | 0 |
| **TOTAL** | **$4,642** | **$2,802** | **$4,681** |

6. § 1325(b)(2) states:

For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under § 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in § 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

As the Bankruptcy Appellate Panel said in *Jodoin*, 209 B.R. at 142, "the 'disposable income' test that is delineated in Code § 1325(b) provides an excellent starting point for measuring a debtor's ability to pay under § 523(a)(15)(B)."

In arriving at my reassessment of Mrs. Beckford's monthly expenses, I find that several of her claimed expenses were unreasonable. For example,

Based on the evidence, it is unreasonable for Mrs. Beckford to pay $200 a month to store her piano.

Mrs. Beckford scheduled $200 for her monthly home maintenance expenses. There is no support in the evidence for Mrs. Beckford's claim in this regard. However, Mrs. Beckford rents an apartment. It is unlikely that a monthly expense of $200 is necessary to maintain Mrs. Beckford's apartment, especially in comparison to Dr. Beckford who did not claim any amount for home maintenance expenses in his chapter 13 case.

I allowed Mrs. Beckford $200 a month for food in light of the parties' daughter's imminent eighteenth birthday in light of the fact that Dr. Beckford feeds his family of 3 people on a monthly budget of $350.

In determining what is a reasonable amount for transportation, I compared Mrs. Beckford's claimed transportation expense to the amount Dr. Beckford claimed in his bankruptcy. Dr. Beckford's commute is twice as long as Mrs. Beckford's, and his car is much older then Mrs. Beckford's, yet he spends only $185 a month for transportation. I have, therefore, reduced her expense allowance for transportation to $150 per month.

I also have determined that the allowance given to the Beckfords' daughter should not be included in Mrs. Beckford's expenses. Dr. Beckford has made child support payments for 9 years and has demonstrated by his testimony his strong commitment to continue this support. Both parents demonstrated a strong desire to continue supporting their daughter, but there is no justification in this instance to give either parent more budgetary credit than the other receives in recognition of this impulse. Rather, I conclude that it is more appropriate to disregard this expense item altogether for purposes of arriving at my judgment in this dispute.

Based on these considerations, I conclude that Mrs. Beckford has failed to demonstrate that the Ability to Pay exception to nondischargeability is applicable to her. Mrs. Beckford understated her 1999 gross monthly income by $1,000. Notwithstanding her protestations to the contrary, I find that her future income is more likely than not to be at least as great as her 1999 income. Estimating taxes of 20%, I find that her monthly net income should be about $800 per month more than she has acknowledged in her schedules. This results in monthly net income of about $3,600 versus monthly expenses of about $2,800, leaving Mrs. Beckford with disposable income of about $800 per month. Mrs. Beckford has not met her burden of proving by a preponderance that she is unable to pay her debt to Dr. Beckford.

3. *Mrs. Beckford has not proven, pursuant to § 523(a)(15)(B), that discharging the debt will result in a benefit to her that outweighs the detrimental consequences to Dr. Beckford*

■ Because Mrs. Beckford has failed to establish an inability to pay the debt to Dr. Beckford, it is necessary to determine whether the second exception to nondischargeability, § 523(a)(15)(B), applies. The Detriment exception to dischargeability applies here if discharging the debt "would result in a benefit to the debtor that outweighs the detrimental consequences to a . . . former spouse."[7] The Detriment exception requires me to balance the detrimental consequences facing Dr. Beckford against the benefit Mrs. Beckford would receive should the debt be discharged. In this case the evidence establishes that discharging the debt would have serious detrimental consequences for

7. § 523(a)(15)(B).

Dr. Beckford. Dr. Beckford is still driving the 1984 car he received in the property distribution following the parties' 1989 divorce. Apart from being 16 years old, the car now has 300,000 miles on the odometer. In addition to the normal uncertainties associated with a car of this age, Dr. Beckford's car has a trunk that does not open, doors that do not lock, and no air conditioning. Reliable transportation is essential in order for Dr. Beckford to continue his daily 80–mile round-trip commute in our warm, southern California climate and to maintain his income. Dr. Beckford's car is not reliable or adequate for these purposes.

Unfortunately, Dr. Beckford's health, work limitations, financial condition, and chapter 13 plan allow very little flexibility to Dr. Beckford and no ability to increase his income to meet car repair or replacement expenses. While Dr. Beckford's child support payments for his daughter soon will cease upon her majority, since his stroke, Dr. Beckford has been working at only 80% of his previous capacity. It is also true that Dr. Beckford's salary has not yet been adjusted to reflect the 20% reduction in the hours he is able to work. Although his expenses will decrease once child support payments cease, this reduction will be offset by the 20% reduction in his salary that he expects to suffer very shortly because he has exhausted all his sick leave and vacation credits and because he reasonably expects his medical group to lower his salary by 20% to reflect his reduced work schedule. Dr. Beckford has no source of income other than his job, he has no salable assets other than his home, and he has no equity in his home. Dr. Beckford's chapter 13 plan is extremely stringent and probably would not survive any further serious income loss based on further interruption of his reduced work schedule. If Dr. Beckford does not have reliable means of transportation to his job, the financial consequences to him could be devastating.

On the other hand, discharging Mrs. Beckford's debt to Dr. Beckford would reduce Mrs. Beckford's financial pressures and make her life a little more comfortable, but I cannot conclude that Mrs. Beckford is more deserving of that benefit than Dr. Beckford's need to collect on the debt. When I review the totality of the circumstances here, I conclude that she has failed to prove by a preponderance of the evidence that this benefit to her would outweigh the very substantial detriment that discharge of the debt would cause to Dr. Beckford. Therefore, I conclude that Mrs. Beckford has failed to prove that the debt should be discharged pursuant to § 523(a)(15)(B).

In this case, both parties have suffered difficult financial circumstances and have sought bankruptcy relief. As I analyze § 523(a)(15) and the evidence in this case, there is no basis for discharging this debt. Given the particulars of this case and the financial circumstances of the parties, I conclude, however, that modification of the repayment terms of the debt is reasonable and necessary. Neither Dr. Beckford nor Mrs. Beckford have any liquid assets to speak of. Both parties are living on extremely tight budgets and have heavy financial responsibilities in relation to their earnings. The maximum amount of disposable income I have determined Mrs. Beckford can spare is just enough to meet my assessment of the minimum amount necessary to keep Dr. Beckford's car in running condition or to replace it with a car that is new or newer and therefore perhaps more reliable to facilitate his commute to work. I conclude that Dr. Beckford should be allowed to collect on Mrs. Beckford's debt to him at the rate of not more than $500 per month. This will leave Mrs. Beckford with disposable income of $300 per month, and it will afford Dr. Beckford the ability to repair his car or to make installment or lease payments on a replacement car.

## CONCLUSION

The evidence leads me to the conclusion that Dr. Beckford is entitled to a judgment of nondischargeability, pursuant to § 523(a)(15), subject to the limitation outlined above on Dr. Beckford's right to enforce the debt, with interest. The parties are to bear their own costs in this matter.

A separate judgment has been entered herein consistent with the foregoing.